**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| TRIDINETWORKS LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-1063-CFC-CJB |
| | ) | |
| SIGNIFY NORTH AMERICA | ) | |
| CORPORATION and SIGNIFY | ) | |
| NETHERLANDS B.V., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Pending in this patent infringement case brought by Plaintiff TriDiNetworks Ltd.

("Plaintiff") against Defendants Signify North America Corp. ("Signify US") and Signify

Netherlands B.V. ("Signify NL," and collectively with Signify US, "Defendants") is Defendants'

motion to dismiss the operative First Amended Complaint ("FAC") for failure to state a claim,

filed pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion"). (D.I. 29) For the reasons

set forth below, the Court recommends that the Motion be GRANTED-IN-PART and DENIED-

IN-PART.

## I.   BACKGROUND

### A.   Factual Background

Plaintiff is a corporation organized under the laws of Israel with its principal place of

business located in that country. (D.I. 16 ("FAC") at ¶ 1) Plaintiff is the assignee of the patent-

in-suit, United States Patent No. 8,437,276 (the "'276 patent"). (*Id.* at ¶ 14) The '276 patent is

titled "Control Systems, Commissioning Tools, Configuration Adapters and Method for Wireless

and Wired Networks Design, Installation and Automatic Formation." ('276 patent at 1; FAC at ¶

14) It relates to using Near Field Communications, or "NFC." (FAC at ¶ 16) By using NFC,

one can put or "commission" certain devices on a home network by simply "tap[ping]" them with a commissioning tool (like an NFC-enabled smartphone), such that the devices will automatically initialize themselves and form the intended network upon deployment . (*Id.* at ¶¶ 6, 16; *see also* D.I. 33 at 3-4)  NFC commissioning is an improvement over the prior art, in that it enables workers to quickly and easily commission home devices, without necessitating the time-intensive efforts of "highly trained workers[.]"  (FAC at ¶¶ 16-17)

Defendant Signify US is a corporation organized under the laws of Delaware with its principal place of business in New Jersey.  (*Id.* at ¶ 2)  Defendant Signify NL is a corporation organized under the laws of the Netherlands with its principal place of business located there too. (*Id.* at ¶ 3)  Signify US is a wholly-owned subsidiary of Signify NL.  (*Id.* at ¶ 4)  Throughout the FAC, Plaintiff refers to both entities collectively as "Signify."  (*Id.* at ¶ 5)

Defendants are in the business of LED lighting products, including LED lights that are NFC-enabled.  (*Id.* at ¶ 27)  These products include the "Xitanium SR (Sensor Ready) line of LED drivers" (the "Accused Products").  (*Id.*)  Defendants also design, install and maintain lighting installations.  (*Id.* at ¶¶ 7, 18).  They perform this work this through their Professional Lighting Services division.  (*Id.* at ¶ 7)

Further relevant facts related to resolution of the Motion will be set out as needed in Section III.

### B.   Procedural Background

Plaintiff filed this case on June 7, 2019,[1] (D.I. 1), and filed its operative FAC on October

---

[1]   On that same date, Plaintiff filed two other actions in this Court in which it asserts the '276 patent:  *TriDiNetworks Ltd. v. NXP USA, Inc., et al.*, Civil Action No. 19-1062-CFC-CJB and *TriDiNetworks Ltd. v. STMicroelectronics, Inc. et al.*, Civil Action No. 19-1064-CFC-CJB.

22, 2019, (D.I. 16).  Defendants filed their Motion on November 19, 2019, (D.I. 29); briefing on the Motion was completed on December 17, 2019, (D.I. 37).  The Court has been referred this case for all purposes up through expert discovery, except for the *Markman* hearing.  (D.I. 13; D.I. 44)

## II.      LEGAL STANDARD

Defendant's Motion was brought pursuant to Rule 12(b)(6).  The Court will review the Motion pursuant to the familiar two-part analysis set out in cases like *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009), and it incorporates the relevant legal standard set out in *Fowler* by reference herein.

## III.     DISCUSSION

In the FAC, Plaintiff brings three Counts:  Count I (regarding direct infringement pursuant to 35 U.S.C. § 271(a) ("Section 271(a)"), alleged against Signify US); Count II (regarding induced infringement pursuant to 35 U.S.C. § 271(b) ("Section 271(b)"), alleged against both Defendants); and Count III (regarding induced infringement under 35 U.S.C. § 271(f)(1) ("Section 271(f)(1)"), alleged against both Defendants).  Defendants move to dismiss all three Counts, and the Court will address each Count separately below.

### A.      Direct Infringement Under Section 271(a) (Count I)

In Count I, Plaintiff brings a claim for direct infringement of the '276 patent against Signify US.  (FAC at ¶¶ 32-39; *see also* D.I. 30 at 10)  In the FAC, Plaintiff asserts that two claims of the '276 patent have been infringed:  method claim 1 and system claim 17, whose elements are similar to one another.  (FAC at ¶ 31(a)-(j); D.I. 33 at 8-9)  Plaintiff's theory of direct infringement is that Signify US infringes these claims when it "deploys a networked system of Signify products as a service for its customer[.]"  (*See* D.I. 33 at 6, 8-9; *see also* FAC at ¶ 35)  In Defendants' Motion, they argue for dismissal on three primary grounds.

3

First, Defendants argue that while in Count I, Plaintiff alleges that a person, including persons who work for Signify US, "*will perform* each and every method step of claim 1 of the '276 patent[,]" (FAC at ¶ 34), this falls short of an allegation that Signify US *actually did perform* that method in the past. (D.I. 30 at 11) However, as Plaintiff notes, (D.I. 33 at 5-6), other paragraphs in the FAC make it clear that Plaintiff is in fact alleging that Signify US "uses" the Accused Products, and that such products have been and "are used" by Signify US, in order to infringe the two claims at issue (including to perform the method of claim 1). *See Valmont Indus., Inc. v. Lindsay Corp.*, Civil Action No. 15-042-LPS-CJB, 2018 WL 503255, at *3 (D. Del. Jan. 22, 2018). So it is sufficiently clear in the FAC that Plaintiff's allegations are not premised on hypothetical future use.

Second, Defendants argue that although the FAC alleges that Signify US "provides and installs . . . NFC-enabled LED drivers, including its Xitanium SR (Sensor Ready) line of LED drivers[,]" (FAC at ¶ 27), Plaintiff "fails to point to any *support or evidence*" that "[Signify US's] Professional Lighting Services group *actually* provides and installs NFC-enabled LED drivers[.]" (D.I. 30 at 11-12 (emphasis added); *see also id.* at 15-16) In other words, Defendants seem to be suggesting that Signify US's Professional Lighting Services division does *not actually* provide or install these products, and that Plaintiff has not sufficiently proven that it does. (*Id.* at 12 (Defendants noting that the "sole reference" to the Professional Lighting Services division in the FAC cites to a website that "makes *no* mention of NFC-enabled LED drivers or Xitanium SR drivers") (certain emphasis omitted))

It is true that nowhere in the FAC does Plaintiff list out specific projects or instances where Signify US—through its Professional Lighting Services division—actually installed the Accused Products. But this is the pleading stage, not the proof stage. All Plaintiff has to do is

4

set out enough factual assertions in the FAC make it *plausible* that this has happened.  And the

FAC does so, in that it alleges that Signify US:  (1) carries out major service projects in the U.S.

through the Professional Lighting Services division, including "the redesigned tower lights of the

Empire State Building, and the San Francisco Bay Lights, large city street light systems and

lighting for large commercial buildings and industrial campuses"; (2) produces the Accused

Products, which can be deployed on wired and wireless networks; and (3) publishes instructions

for using their products, including the Accused Devices.  (FAC at ¶¶ 7, 27, 31, 36; D.I. 33, exs.

A, B; *see also* D.I. 30, ex. A)  It *is* therefore plausible that the Signify US division at issue, which

is in the business of installing lighting installations, uses its own products when it performs those

installations, including the Accused Products.[2]

Third, Defendants argue that even if it is plausible that its Professional Lighting Services

division does "provide[] and install[] NFC-enabled LED drivers such as Xitanium SR drivers[,]"

Plaintiff's allegations are still deficient, because:  (1) such products can either be used in an

allegedly infringing way (i.e., when they are configured by NFC wireless tools) or in a non-

infringing way (i.e., when they are configured by Digital Addressable Lighting Interface (or

"DALI") hardwire tools); and (2) Plaintiff fails to sufficiently allege that the products have

actually been used *in the infringing manner*.  (D.I. 30 at 12-13; *see also id*. at 16; D.I. 37 at 6-7)

But the FAC notes that Defendants affirmatively claim that use of the NFC wireless option (via

Signify's "SimpleSet" configuration tool) is particularly advantageous.  (FAC at ¶ 31 (quoting

Defendants' Design-In Guide as asserting that "SimpleSet is *especially useful* as it provides a

---

[2]      Defendants posit that it is not plausible that the Professional Lighting Services
division actually installed the Accused Products because Signify US has "thousands of other
potential products in [its] product catalog[.]"  (D.I. 37 at 6)  However, the number of other
products in Signify's product catalog is not a fact in the record that the Court may properly
consider.  *See In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

way to program the output current without drivers connected to power, significantly reducing luminaire assembly time") (emphasis in original, internal quotation marks and citation omitted); *see also* D.I. 33, ex. A at 5)  And so, as Plaintiff argues, "it is plausible that Signify [US] itself takes advantage, at least some of the time, of the convenience and efficiency that it claims for the NFC method[.]"  (D.I. 33 at 8); *cf. In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1341-42 (Fed. Cir. 2012) (determining that a claim for induced infringement was plausible, even though defendants' accused products had substantial non-infringing uses, because the patented method had benefits over the prior art that were described in the patents' specification, and those benefits were enough to give rise to the inference that defendants intended to induce direct infringers to reap these benefits by following the steps of the patented method).

For all of the above reasons, the Court recommends denial of Defendants' Motion as to Count I.

### B.    Induced Infringement Under Section 271(b) (Count II)

In Count II, Plaintiff brings claims for induced infringement against both Defendants pursuant to Section 271(b).  (FAC at ¶¶ 40-53)  Section 271(b) provides, "[w]hoever actively induces infringement of a patent shall be liable as an infringer."  A complaint stating a claim for induced infringement must therefore allege facts that, taken as true, plausibly demonstrate:  (1) the existence of at least one direct infringer; (2) that the defendant took acts that induced direct infringement, while knowing that what it was inducing the direct infringer to do in fact constituted infringement of the patent; and (3) that defendant possessed the specific intent to encourage another's infringement.  *See Bill of Lading*, 681 F.3d at 1336, 1339.  The Court understands Plaintiff's induced infringement theory against each Defendant to be that:  (1) Signify NL induces Signify US to infringe by, *inter alia*, instructing Signify US how to deploy

the Accused Products for its service customers, (FAC at ¶ 46; *see also id.* at ¶ 33), and (2) Signify US and Signify NL both induce their customers (who purchase the Accused Products, and who follow Defendants' instructions on how to use those products) to infringe, (*id.* at ¶ 45).[3] With their Motion, Defendants make two arguments about why Plaintiff's allegations of induced infringement are wanting.

First, and relevant only to Plaintiff's claim against Signify US, Defendants argue that Plaintiff does not sufficiently identify a direct infringer who is induced to infringe by Signify US, as the FAC only makes reference to "unnamed" direct infringers.  (D.I. 30 at 19-20 (asserting that Plaintiff has failed to "nam[e] a single entity or instance of practicing the claimed methods" and "instead refers only to unnamed persons") (internal quotation marks and citation omitted)) Yet in order to plead induced infringement, a plaintiff does not need not identify a specific alleged infringer by name; instead, it need only allege "facts sufficient to allow an inference that at least one direct infringer exists."  *Bill of Lading*, 681 F.3d at 1336; *see also E.I. Du Pont de Nemours & Co. v. Heraeus Holding GmbH*, Civ. Action No. 11-773-SLR-CJB, 2012 WL 4511258, at *4 (D. Del. Sept. 28, 2012).  In Count II, Plaintiff identifies these infringers:  Signify US's U.S.-based customers, who purchase the Accused Products and deploy those products. (FAC at ¶¶ 43, 48, 49; *see also id*. at ¶ 31(e))  Reading these allegations together, they are sufficient to plausibly plead that at least one direct infringer exists.  *See Bill of Lading*, 681 F.3d at 1336 (finding the plaintiff to have sufficiently pleaded the existence of a direct infringer, when the plaintiff alleged that non-specifically identified "trucking customers" of a defendant

---

[3]        (*See also* FAC at ¶ 31(e) ("Signify US . . . performs this step upon installation of a system . . . as do Signify's customers when installing a system comprised of Signify components in accordance with Signify's instructions."))

infringed by allegedly practicing the method of the patent-in-suit from inside their truck cabs); *see also Valmont Indus., Inc.*, 2018 WL 503255, at *3.

Second, Defendants argue that Plaintiff does not sufficiently allege specific intent to induce infringement.  (D.I. 30 at 17-19; D.I. 37 at 7-9)  Here, the Court understands Defendants' argument to be that Plaintiff has not sufficiently shown how Defendants' user manuals for the Accused Products instruct users to carry out steps of the claimed method.  To that end, Defendants argue that in the FAC, while Plaintiff points to Defendants' user manuals as evidence of Defendants' acts of inducement, those allegations are wanting because:  (1) the manuals do not instruct users about how to practice "'all the steps of the claimed method together'"; and (2) the manuals demonstrate how to use the products in both an allegedly infringing manner, but also in a non-infringing manner (i.e., configured via DALI hardwire).  (D.I. 30 at 18 (quoting *Mirror Worlds v. Apple Inc.*, 692 F.3d 1351, 1360 (Fed. Cir. 2012); *see also* D.I. 37 at 8-9 (same))[4]  As to the former criticism, Plaintiff attached to its answering brief a "Design-In Guide" and a "MultiOne Manual"—i.e., the user manuals at issue, which Plaintiff had also cited to in the FAC—in order to explain how Defendants (through the use of such materials and related videos) infringe and induce infringement of the patent-in-suit.  (D.I. 33 at 11-12 & exs. A-B)[5]  Then,

---

[4]     *Mirror Worlds*, the case cited here by Defendants for support, is a post-trial decision, not a decision relating to the sufficiency of allegations at the pleading stage.  692 F.3d at 1360-62.

[5]     In their reply brief, Defendants argue that in attaching and making reference to these documents in its answering brief, Plaintiff has done something wrong, because the documents were not previously attached as exhibits to the FAC.  (D.I. 37 at 7-8)  The Court rejects this argument.  A court evaluating a Rule 12(b)(6) motion may consider a "document integral to or explicitly relied upon in the complaint[.]"  *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d at 1426 (emphasis, internal quotation marks and citation omitted).  And here, because these documents were cited in the FAC and were integral to the FAC's articulation of infringement, the Court may consider their contents in assessing the instant Motion.  *See Red Valve Co. v. Armadillo Automation, Inc.*, Civil Action No. 15-364, 2015 WL 8992679, at *4 n.5

Plaintiff plausibly explained (as it also did in the FAC) how the contents of those two documents instruct others to take steps or actions that will lead to infringement.  (D.I. 33 at 11-12)  And in their reply brief, Defendants do not really explain why it is that Plaintiff is wrong—i.e., why it is that those documents would *not* plausibly prompt user action that amounts to infringement.  (D.I. 37 at 8)  As to the latter criticism, even to the extent that these user manuals could *also* plausibly instruct a person as to how to use the Accused Products in a non-infringing way, at the pleading stage, that is not a reason to dismiss the claims.  *See Bill of Lading*, 681 F.3d at 1341 ("DriverTech argues, moreover, that the fact that its products have substantial non-infringing uses weighs against inferring that it intended to induce its customers to engage in an infringing one. . . . DriverTech is essentially arguing that, at the pleading stage, [plaintiff] must allege facts that prove all aspects of its claims, or at the very least make those claims probable.  But that is not what is required."); *see also DRG-Int'l, Inc. v. Bachem Ams., Inc.*, Case No. CV-15-7276-MWF (SSx), 2016 WL 3460791, at *6 (C.D. Cal. Jan. 5, 2016).  This is especially so when, as here, the documents teach that there are certain benefits to using the products in the allegedly infringing way.  (FAC at ¶¶ 15, 31(e), (j))[6]

---

(W.D. Pa. Dec. 16, 2015) (considering a letter attached to the plaintiff's briefing because it was relied upon in plaintiff's complaint).

[6] In their reply brief, Defendants made one other argument, which they failed to raise in their opening brief:  that the Design-In Guide and the MultiOne Manual do not demonstrate specific intent because there is insufficient evidence that those documents are actually linked to Signify US and Signify NL (as opposed to being linked to other Signify-related entities).  (D.I. 37 at 9 ("Critically, neither of these manuals refer to the named defendants in this case[.]"))  Because this argument could have and should have been raised in the opening brief, it has been waived, and so the Court will not consider it here.  *See McKesson Automation, Inc. v. Swisslog Italia S.p.A.*, 840 F. Supp. 2d 801, 803 n.2 (D. Del. 2012); *LG Display Co., Ltd. v. AU Optronics Corp.*, Civil Action Nos. 06-726-LPS, 07-357-LPS, 2010 WL 5463305, at *4 (D. Del. Dec. 29, 2010); *see also* D. Del. LR 7.1.3(c)(2).

For all of the above reasons, the Court recommends that the Motion be denied as to Count II.

### C.       Induced Infringement Under Section 271(f)(1) (Count III)

In Count III, Plaintiff brings claims for induced infringement pursuant to Section 271(f)(1) against both Defendants.  (FAC at ¶¶ 54-61)  Section 271(f)(1) requires, *inter alia*, that each Defendant "supplies or causes to be supplied in or from the United States all or a substantial portion of the components of a patented invention, where such components are uncombined in whole or in part," so as to "actively induce the combination of such components outside the United States in a manner that would infringe the patent if such combination occurred within the United States[.]"  35 U.S.C. § 271(f)(1).  In this Count, Plaintiff alleges that Defendants supply "all or a substantial portion of the components of a patented invention," (FAC at ¶ 57), and further, that they induce purchasers outside the U.S. to infringe through their "demos, publications and videos referenced in Counts I and II," (*id.* at ¶ 56).

As to this Count, the Court agrees with Defendants that the FAC does not contain sufficient detail to allow for a plausible claim.  As noted above, the FAC alleges that the Accused Products at issue are "NFC-enabled LED drivers, including [Defendants'] Xitanium SR (Sensor Ready) line of LED drivers."  (FAC at ¶ 27)  But the FAC leaves it very unclear whether, as to Count III, the relevant "components" shipped from the U.S. are said to be some or all of the parts that make up these Accused Products.  Moreover, so far as the Court can tell, there are no factual allegations in the FAC about exactly *how* Signify US or Signify NL is said to ship or supply such components overseas from the U.S.  The absence of such allegations is especially concerning where:  (1) one of the two Defendants is not actually located in the U.S.; and (2) a picture in Plaintiff's prior Complaint and in the FAC suggests that manufacture of the

Xitanium LED Driver occurs in Mexico, (D.I. 30 at 22 (citing D.I. 1 at 10); *see also* FAC at 14; D.I. 33, ex. A at 26)).

Therefore, the Court recommends that Defendants' Motion be granted as to Count III. *See Confluent Surgical, Inc., v. HyperBranch Med. Tech., Inc.*, Civil Action No. 17-688-LPS-CJB, 2017 WL 4804264, at *1 (D. Del. Oct. 25, 2017).

## IV.   CONCLUSION

For the foregoing reasons, the Court recommends that Defendant's Motion be GRANTED as to Count III and DENIED as to Counts I and II.

With regard to Count III, because it is not clear to the Court that allowing the opportunity to amend would be a futile act, because this is the first time the Court has found these claims to be deficiently pleaded, and because leave to amend should be given freely "when justice so requires[,]" Fed. R. Civ. P. 15(a)(2), the Court recommends that dismissal be without prejudice. It further recommends that Plaintiff be given leave to file a further amended complaint addressing the deficiencies outlined regarding Count III, and that if the District Court affirms its decision herein, that Plaintiff be given 14 days to file such an amended complaint.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2).  The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

11

Dated:  June 1, 2020

_Christopher J. Burke_
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE